IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

|  |  |  |
|---|---|---|
| ELECTRIC RELIABILITY COUNCIL OF TEXAS, INC. ("ERCOT"), | § § § § | |
| Appellant/Cross-Appellee, | § § | Consolidated Civil Action No. C-07-71 Lead Case |
| v. | § § § | No. C-07-134 Member Case No. C-07-205 Member Case |
| MICHAEL B. SCHMIDT, TRUSTEE, | § § | |
| Cross-Appellant, | § § | |
| and | § § | |
| LEO LEONARD MAY, | § § § | |
| Cross-Appellant/Appellee. | § | |

**ORDER**

On July 10, 2007, the Court held a hearing on the above-styled consolidated bankruptcy appeal, where the parties had an opportunity to present oral arguments. At the July 10, 2007 hearing, the Court issued the following Orders:

**1.   Jurisdiction**

Conducting a de novo review, the Court concludes that this Court and the Bankruptcy Court have jurisdiction over this case pursuant to 28 U.S.C. § 1334.

A court has bankruptcy jurisdiction over a dispute that occurs after a plan of reorganization is confirmed by the bankruptcy court if the dispute deals with "matters pertaining to the implementation or execution of the plan." In re Craig's Stores of Texas, Inc., 266 F.3d 388, 390-91 (5th Cir. 2001); In re U.S. Brass Corp., 301

F.3d 296, 304-05 (5th Cir. 2002). Generally, "[a] matter pertains to the implementation or execution of the plan if it impacts compliance with or completion of the reorganization plan." See In re Network Cancer Care, No. 05-11147, 197 Fed. Appx. 284, 2006 WL 2034425 at *1 n.3 (5th Cir. July 19, 2006) (citing In re U.S. Brass, 301 F.3d at 305). This case affects compliance with TCE's Plan of Reorganization (hereinafter, the "Plan"), because the primary question raised is whether ERCOT complied with a specific injunctive provision incorporated into the Plan and governing the legal relationship between TCE (the debtor) and ERCOT (an unsecured creditor). This dispute also deals precisely with the operation and application of the Plan, specifically with how the Plan's provisions affect or limit ERCOT's legal remedies for addressing TCE's default under the Plan. Accordingly, jurisdiction is appropriate in this case. In re Case, 937 F.3d 1014 (5th Cir. 1991) (holding that the bankruptcy court had core jurisdiction over a dispute involving compliance with an agreement that was "executed as an integral part of . . . [the] reorganization plan").[1]

---

[1] This case is distinguishable from In re Craig's Stores of Texas, Inc., 266 F.3d 388 (5th Cir. 2001), on which ERCOT principally relies. That case involved the debtor, Craig's Stores, which had a long-standing, complex business arrangement with the Bank of Louisiana, under which the Bank assisted in financing Craig's operations by buying the company's receivables. The parties' arrangement continued after Craig's sought Chapter 11 bankruptcy protection and throughout the reorganization process. The contract between Craig's Stores and Bank of Louisiana was assumed as part of the debtor's confirmed reorganization plan. Following reorganization, Craig's sued the Bank for a breach of the contract, which was alleged to have

**2.   ERCOT's Draw on the May Letter of Credit**

For the reasons set forth below, the Court AFFIRMS the judgment of the Bankruptcy Court that ERCOT was not permitted to draw on the $900,000 May Letter of Credit as a result of TCE's default of payments on the Plan Debt.[2]  (See D.E. 111, 117, Adv. Proc. 05-2028).

When TCE initially filed for bankruptcy, it had an outstanding debt to ERCOT in excess of $31 million.  This debt was reflected in

---

occurred post-reorganization.  The Fifth Circuit held that jurisdiction did not exist under these facts, finding particularly important that "no facts or law deriving from the reorganization or the plan w[ere] necessary" to Craig's claim against the Bank, and that the claim did "not bear on the interpretation" of the plan. Craig's Stores, 266 F.3d at 391. In this case, in contrast, facts and law deriving from the reorganization and the Plan are *integral* to the dispute at hand, because a primary issue is whether injunctive provisions agreed to during the reorganization process, and contained in the Plan, prohibited ERCOT from drawing on a certain letter of credit. Likewise, as the parties' briefs and arguments show, interpretation of the Plan (specifically, whether the Plan as a whole prohibits the actions ERCOT took) is central to this case. Indeed, the Plan specifically retained jurisdiction with the Bankruptcy Court to determine all controversies arising "in connection with the interpretations, enforcement, or consummation of the Plan" or involving "violation of any injunctive provision of this Plan." (D.E. 597, Bankr. Case, Reorganization Plan, p. 49 ¶ 18.)  Therefore, Craig's Stores does not require a contrary result.

[2] The Court notes that the Bankruptcy Court's rationale in its Findings of Fact and Conclusions of Law (D.E. 111, Adv. Proc. 05-2028) is not entirely clear, and this Court does not specifically affirm the Bankruptcy Court's reasoning in determining that ERCOT could not properly draw on the May Letter of Credit.  Regardless, as set forth in this Order, this Court does affirm the ultimate decision of the Bankruptcy Court that ERCOT could not permissibly draw on the May Letter of Credit as a result of TCE's default on the Plan Debt.

various ERCOT invoices to TCE for the purchase of electricity in the Texas deregulated market.  At the time of TCE's Chapter 11 filing, there was hope amongst the debtor and creditors that TCE could continue to operate, so as to attempt to maximize creditor value and prevent an immediate liquidation.  To that end, TCE (and certain of its principals, including Leo Leonard May) and ERCOT agreed to a series of injunctions limiting the actions ERCOT could take with respect to collection of the debt reflected by the ERCOT invoices.  (D.E. 8, 53, Adv. Proc. 03-2024).

In order to operate in the ERCOT market, an entity such as TCE must have a Qualified Scheduling Entity ("QSE") Agreement in place with ERCOT.  TCE had such a QSE in place with ERCOT prior to the Chapter 11 filing.  During the course of the bankruptcy proceedings, TCE sought Bankruptcy Court permission to enter into a new QSE Agreement with ERCOT, so that TCE could continue to operate and maximize creditor value.  On September 4, 2003, the Bankruptcy Court granted TCE's motion, and authorized TCE to assume its pre-petition QSE with ERCOT, subject to several modifications. (See D.E. 493, Bankr. Case, "Order Authorizing Debtor to Assume Modified Executory Contract with Electric Reliability Council of Texas, Inc.").  This September 4, 2003 Order specifically states as follows:

> Defendant ERCOT is prohibited from directly or indirectly taking any further action to collect the Invoices that are the subject of the Adversary Complaint (i) taking any further action to collect the Invoices that are the

> subject of the Adversary Complaint, (ii) drawing down any Letter of Credit ("LC") securing the obligation represented by those Invoices, (iii) otherwise taking any action to facilitate the collection or payment of those Invoices and/or the obligation reflected therein, or (iv) the foreclosure of any collateral securing payment of those Invoices or the obligation reflected by them except as authorized by further order of this court.

(D.E. 496, Bankr. Case, ¶ 1).[3] The Bankruptcy Court's September 4, 2003 Order was specifically incorporated into the confirmed TCE Plan of Reorganization. (Plan, p. 25, ¶ 6, stating that the September 4, 2003 Order "is incorporated into the Plan and is to remain in full force and effect"). Of note, the Plan also designated the amount TCE owed to ERCOT based on the aforementioned invoices as the "Plan Debt," and set forth a payment schedule whereby TCE had to repay that Plan Debt to ERCOT.[4]

Following Plan confirmation and as a part of its efforts to continue operations, TCE had to post new collateral with ERCOT.[5] To that end, in April, 2004, Wells Fargo posted a letter of credit

---

[3] This language is carried over from the previously-referenced Bankruptcy Court injunctions agreed to by the various parties, with certain very minor modifications. (D.E. 8, 53, Adv. Proc. 03-2024).

[4] Although TCE's original debt to ERCOT was in excess of $31 million, the Plan Debt was approximately $15 million, following resettlement and various true-ups.

[5] For an entity such as TCE to do business in the ERCOT region, that entity must post collateral with TCE. The amount of required collateral is determined by ERCOT pursuant to an Estimated Actual Liability ("EAL") calculation. Following Plan confirmation, ERCOT calculated TCE's EAL using only TCE's post-petition obligations to ERCOT, not the amount of Plan Debt TCE owed to ERCOT.

to ERCOT in the amount of $900,000, as collateral for TCE. The letter of credit was secured by Leo Leonard May, one of TCE's principals.

TCE failed to make timely payments to ERCOT on the Plan Debt. TCE did not, however, default or fall behind on payments owed to ERCOT as a result of TCE's ongoing business operations. On March 31, 2005, strictly as a result of TCE's default on the Plan Debt, ERCOT drew down on the $900,000 May Letter of Credit. ERCOT maintained that it was permitted to draw down on this security, even though TCE did not default on any payments owed pursuant to TCE's post-petition business operations. As a result of ERCOT's draw on the May Letter of Credit, Leo Leonard May brought suit against ERCOT on April 1, 2005, in Adversary Proceeding 05-2028.

This Court holds that the Bankruptcy Court did not err in determining that ERCOT's draw on the May Letter of Credit was improper and in violation of certain Bankruptcy Court orders. In particular, as noted above, the September 4, 2003 Order (which is incorporated into the Plan) provides that "ERCOT is prohibited from directly or indirectly taking any further action to collect the Invoices that are the subject of the Adversary Complaint . . . [and prohibited from] otherwise taking any action to facilitate the collection or payment of those Invoices and/or the obligation reflected therein . . . ." (D.E. 496, Bankr. Case, ¶ 1). ERCOT's actions in drawing on the May Letter of Credit, in response to

TCE's default on the Plan Debt, violate this injunctive language of the September 4, 2003 Order (as incorporated into the Plan).

ERCOT argues that the September 4, 2003 Order does not apply because confirmation of the Plan "discharged" all the obligations TCE owed ERCOT under the invoices. Specifically, ERCOT argues that following Plan confirmation, all of TCE's obligations to ERCOT became "post-petition debt" not covered by the injunctive language of the September 4, 2003 Order (as incorporated into the Plan).[6] ERCOT's argument is unpersuasive. Although the debt reflected by the invoices was technically "discharged" by the Plan, it was also contemporaneously assumed and re-codified by the Plan as part of the "Plan Debt." See 11 U.S.C. § 1141(d)(1)(A); In re Benjamin Coal Co., 978 F.2d 823, 827 (3d Cir. 1992). Confirmation of the Plan did not, as ERCOT suggests, completely transform the invoice debt into "post-petition debt" <u>not covered by the injunctions</u>. Rather, the debt reflected by the invoices merely became the debt under the Plan. ERCOT was still prevented by the September 4, 2003 Order from taking any action to collect on that debt except as specifically provided for in the Plan.[7]

---

[6] ERCOT maintains that all post-petition debt is not covered by the injunctive language.

[7] Of note, TCE's obligations to ERCOT under the Plan were unsecured. All of the unsecured debt under the Plan was secured solely by a $1.3 million letter of credit backed by Manti Resources, a principal of TCE. This $1.3 million value was determined based on the liquidation value of TCE.

Further, ERCOT argues that, regardless of the injunctive language in the September 4, 2003 Order and the Plan, ERCOT had the authority under its own "protocols" (which also bind TCE) for its draw on the May Letter of Credit. For the reasons set forth below, the Court rejects this argument.

Under Bankruptcy law, it is well-settled that a confirmed Chapter 11 reorganization plan has a binding effect on both debtors and creditors, and the plan functions as a judgment with respect to the parties bound by its terms. See 11 U.S.C. § 1141(a); In re Laing, 31 F.3d 1050, 1051 (10th Cir. 1994) ("confirmed plan binds [the parties] as a final judgment on the merits"); Republic Supply Co. v. Shoaf, 815 F.2d 1046, 1051 (5th Cir. 1987); In re Stratford of Texas, Inc., 635 F.2d 365, 368 (5th Cir. 1981) (a confirmed plan is also "tantamount to a judgment of the bankruptcy court"); Hillis Motors, Inc. v. Hawaii Auto. Dealers' Ass'n, 997 F.2d 581, 588 (9th Cir. 1993) (stating that a "confirmed bankruptcy plan is a judgment rendered by a federal court"). Thus, by statute, the terms of the Plan are binding on ERCOT. See 11 U.S.C. § 1141(a) ("the provisions of a confirmed plan bind the debtor . . . and any creditor, equity security holder, or general partner in the debtor, whether or not the claim or interest of such creditor . . . is impaired under the plan and whether or not such creditor . . . has accepted the plan"). Therefore, whatever power ERCOT had under its protocols could <u>not</u> be used to avoid an obligation imposed by the

Plan and made binding upon it by federal statute. Accordingly, ERCOT cannot avoid, modify, or render meaningless the injunctive language of the September 4, 2003 order and the Plan by reliance on its protocols.[8]

Based on the above, the Court AFFIRMS the Bankruptcy Court's decision that ERCOT could not draw on the May Letter of Credit as a result of TCE's default on repayment of the Plan Debt.

### 3. Chapter 7 Trustee's Claims Against ERCOT

In Adversary Proceeding No. 05-2028, TCE intervened and filed its own Complaint against ERCOT on April 3, 2005 (D.E. 2, Adv. Proc. 05-2028). After the TCE bankruptcy case was converted to Chapter 7, TCE's claims were prosecuted by the Chapter 7 Trustee, Michael Schmidt. The Trustee filed an Amended Complaint on September 27, 2005, asserting the following claims against ERCOT: (1) Civil Contempt; (2) Claims for Declaratory Judgments; (3) Fraud; (4) Breach of Contract; (5) Fraudulent Transfers; (6) Recovery of Post-Petition Transfers; (7) Claim Subordination; (8) Transfer of Collateral Rights to the Estate; (9) Punitive Damages; and (10) Attorney's Fees. (D.E. 73, Adv. Proc. 05-2028).

---

[8] Likewise, ERCOT's argument that its protocols are binding on TCE under both state law and the QSE Agreement is of no importance. The injunctive language prohibited ERCOT from drawing on the May Letter of Credit regardless of whether TCE agreed to be bound by ERCOT's various protocol modifications. No matter what the ERCOT protocols said, under 11 U.S.C. § 1141(a), ERCOT had to abide by the injunctive language in the September 4, 2003 Order and in the Plan.

The Bankruptcy Court did not address any of the Trustee's claims in the Bankruptcy Court's Findings of Fact and Conclusions of Law (D.E. 111, Adv. Proc. 05-2028), or in the Bankruptcy Court's Original Judgment following the October, 2005 trial (D.E. 117, Adv. Proc. 05-2028).  In its Amended Judgment issued on January 12, 2007, the Bankruptcy Court included the following one line regarding the Trustee's claims: It is "ORDERED, ADJUDGED and DECREED that Michael Schmidt, Chapter 7 Trustee for Texas Commercial Energy take nothing by his claims."  (D.E. 128, Adv. Proc. 05-2028).  The Bankruptcy Court did not provide any reasons for its denial of the Trustee's claims.

In light of the above, this Court hereby REMANDS the Trustee's claims against ERCOT, as set forth in the Trustee's Amended Complaint (D.E. 73, Adv. Proc. 05-2028), back to the Bankruptcy Court for further consideration and clarification, along with an amended findings of fact and conclusions of law that specifically addresses the above-referenced claims brought by the Trustee.

### 4. <u>Leo Leonard May's Request for Attorney's Fees</u>

The Court hereby AFFIRMS the Bankruptcy Court's DENIAL of Leo Leonard May's request for attorney's fees.  Mr. May sought attorney's fees on a breach of contract theory under Texas Civil Practice & Remedies Code § 38.001[9], and alternatively under the

---

[9] Tex. Civ. Prac. & Rem. Code § 38.001 states that "[a] person may recover reasonable attorney's fees from an individual or corporation, in addition to the amount of a valid claim and

Texas Uniform Declaratory Judgments Act, Texas Civil Practice & Remedies Code § 37.009.

First, the Court finds that Mr. May is not entitled to attorney's fees under a breach of contract theory. In his Complaint in Adversary Proceeding No. 05-2028, Mr. May did not even bring a specific claim for breach of contract. (See D.E. 1, Adv. Proc. 05-2028, "Complaint for Declaratory Judgment, Temporary Restraining Order, Preliminary and Permanent Injunction").[10] Because Mr. May did not even bring such a claim, he did not "prevail" and secure actual damages on a breach of contract cause of action, and he cannot claim attorney's fees under Tex. Civ. Prac. & Rem. Code § 38.001.[11]

---

costs, if the claim is for . . . an oral or written contract." The Texas Supreme Court has held that the grant of attorney's fees under this section is not discretionary. See Bocquet v. Herring, 972 S.W.2d 19, 20 (Tex. 1998). The trial court has discretion to fix the amount of attorney's fees, but does not have discretion to deny attorney's fees entirely if they are proper. See Great Global Assurance Co. v. Keltex Props., 904 S.W.2d 771, 776 (Tex. App.--Corpus Christi 1995). To recover attorney's fees pursuant to Section 38.001, a party must recover actual damages on its claim. See Green Int'l, Inc. v. Solis, 951 S.W.2d 384, 390 (Tex. 1997).

[10] The Court notes that the words "breach of contract" do not even appear in Mr. May's Complaint in Adversary Proceeding 05-2028. In his series of requests for declaratory relief, Mr. May made certain oblique references to ERCOT's alleged breach of the Plan of Reorganization. However, Mr. May did not bring any separate cause of action seeking damages for breach of contract.

[11] The Court also notes that there is no indication in the record that Mr. May was a party to the TCE Plan of Reorganization, so as to allow Mr. May to bring a breach of contract claim against ERCOT for ERCOT's alleged breach of the Plan.

Further, the Court finds that the Bankruptcy Court was within its discretion to refuse to grant attorney's fees to Mr. May pursuant to Tex. Civ. Prac. & Rem. Code § 37.009.  The statute provides that in any proceeding under the Texas Uniform Declaratory Judgments Act, "the court **may** award costs and reasonable and necessary attorney's fees as are equitable and just."  Tex. Civ. Prac. & Rem. Code § 37.009 (emphasis added).  An award of attorney's fees in a declaratory judgment action is not mandatory, rather, whether to award such attorney's fees is within the discretion of the trial court.  See Ridge Oil Co. v. Guinn Invs. Inc., 148 S.W.3d 143, 162 (Tex. 2004); Ameristar Jet Charter, Inc. v. Cobbs, 184 S.W.3d 369, 376 (Tex. App.--Dallas 2006).  The trial court's "judgment [regarding attorney's fees] will not be reversed on appeal absent a clear showing that it abused that discretion." Oake v. Collin County, 692 S.W.2d 454, 455 (Tex. 1985).  In this case, Mr. May has failed to make a clear showing that the Bankruptcy Court abused its discretion in declining to award attorney's fees to Mr. May under Section 37.009.  Accordingly, given the complexity of the issues in this case, the Court affirms the Bankruptcy Court's decision regarding attorney's fees under the Texas Uniform Declaratory Judgments Act.

### 5. **Trustee's Request to Reopen the Record to Take Additional Testimony**

This Court AFFIRMS the decision of the Bankruptcy Court

DENYING the Trustee's request to reopen the record to take the testimony of Maxine Buckles. Ms. Buckles was a former employee of ERCOT, and she served as the ERCOT representative on the TCE Official Committee of Unsecured Creditors. Ms. Buckles left ERCOT in November, 2004.

"The standard for deciding whether the [trial] court erred in denying a motion to reopen is well-settled: We review for abuse of discretion a district court's ruling on a party's motion to reopen its case for the presentation of additional evidence." In re Liljeberg Enterprises, Inc., 304 F.3d 410, 453 n. 13 (5th Cir. 2002); Morris v. Homco Int'l, Inc., 853 F.2d 337, 343 (5th Cir. 1988) ("We overturn a [trial] court's decision to reopen the record only for abuse of discretion"). The trial court's decision "will not be disturbed in the absence of a showing that it has worked an injustice in the cause." In re Liljeberg Enterprises, Inc., 304 F.3d at 453 n. 13.

In this case, the Trustee had ample time to secure the testimony of Ms. Buckles prior to trial, and the record indicates that the Trustee and Mr. May were able to successfully locate Ms. Buckles and attempt to serve her with a subpoena. The Trustee and Mr. May had over a year prior to trial to enforce a subpoena on Ms. Buckles. Accordingly, this Court finds that the Bankruptcy Court did not abuse its discretion in denying the Trustee's motion to reopen the record to take Ms. Buckles' testimony.

### 6.  **Damages Awards to Leo Leonard May**

This Court AFFIRMS the Bankruptcy Court's award of (1) $110,601.36 and $8,045.74 to Leo Leonard May; and (2) the Bankruptcy Court's further award of prejudgment interest to Leo Leonard May in the amount of $121,101.78.

ERCOT argues that the Bankruptcy Court's above-referenced awards to Leo Leonard May constitute an impermissible award of "double interest" to Mr. May.  The Court finds ERCOT's argument to be unpersuasive, because the above-referenced awards reflect different injuries suffered by Mr. May as a result of ERCOT's conduct.

With regard to the first award referenced above (the $110,601.36 and $8,045.74), the Bankruptcy Court appears to have recognized that, as a result of ERCOT's actions, Mr. May had to execute a promissory note to American Bank to cover his obligations under the May Letter of Credit.  Mr. May had to make payments on that promissory note, which included interest.  The $110,601.36 and $8,045.74 reflect these payments made by Mr. May.  Accordingly, the award of $110,601.36 and $8,045.74 constitutes Mr. May's <u>actual damages</u>, the amount Mr. May had to pay out-of-pocket as a result of ERCOT's actions.

With regard to the second award referenced above (the $121,101.78 in prejudgment interest), this award recognizes a different type of injury suffered by Mr. May.  "Prejudgment

-14-

interest is awarded to fully compensate the injured party". Brainard v. Trinity Universal Ins. Co., 216 S.W.3d 809, 812 (Tex. 2006) (citing Cavnar v. Quality Control Parking, Inc., 696 S.W.2d 549, 552 (Tex. 1985)).  It is a form of "compensation allowed by law as additional damages for lost use of the money due as damages during the lapse of time between the accrual of the claim and the date of judgment."  Brainard, 962 S.W.3d at 812 (citing Johnson & Higgins of Texas, Inc. v. Kenneco Energy, Inc., 962 S.W.2d 507, 528 (Tex. 1998)).  The Bankruptcy Court's award for prejudgment interest recognizes Mr. May's lost use of the money he had to pay out as a result of ERCOT's actions.  Accordingly, this is a separate award intended to redress a separate injury suffered by Mr. May.

Based on the above, this Court rejects ERCOT's argument that the Bankruptcy Court has impermissibly awarded "double interest" to Leo Leonard May.

SIGNED and ENTERED this 10th day of July, 2007.

_____
Janis Graham Jack
United States District Judge